COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-130-CV

LYNDA K. MORRISON APPELLANT

V.

CITIBANK (SOUTH DAKOTA) N.A. APPELLEE

------------

FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Lynda K. Morrison appeals from the trial court’s judgment in favor of Citibank (South Dakota) N.A.  In one issue, Morrison challenges Citibank’s recovery pursuant to an “account stated” cause of action.  We reverse and remand.

Citibank sued Morrison to recover the outstanding balances on Morrison’s ten Citibank credit card accounts.  Citibank initially pleaded several causes of action including breach of contract and account stated, but at the beginning of the bench trial, for reasons undisclosed in the record, Citibank abandoned its breach of contract claims.  After hearing evidence and argument, the trial court rendered judgment in favor of Citibank on its account stated cause of action. 

In one issue, Morrison challenges Citibank’s recovery pursuant to account stated, arguing among other things that account stated does not apply to the collection of credit card debt and that the evidence is legally and factually insufficient to establish the elements of account stated. 

A party is entitled to relief under the common law cause of action of account stated where (1) transactions between the parties give rise to indebtedness of one to the other; (2) an agreement, express or implied, between the parties fixes an amount due; and (3) the one to be charged makes a promise, express or implied, to pay the indebtedness.
(footnote: 2)  
In the absence of an agreement fixing the price, it may be sufficient to prove that the price charged was usual, customary, and reasonable.
(footnote: 3)
 A legal sufficiency challenge may only be sustained when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact.
(footnote: 4)  
In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could and disregard evidence contrary to the finding unless a reasonable fact-finder could not.
(footnote: 5) 

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.
(footnote: 6)  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.
(footnote: 7)  We may not substitute our judgment for that of the fact-finder.
(footnote: 8)
 When reversing on factual sufficiency grounds, we must “detail the evidence relevant to the issue in consideration and clearly state why the jury’s finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias.”
(footnote: 9)  We must also state in what regard the contrary evidence greatly outweighs the evidence in support of the judgment.
(footnote: 10)
 The evidence at trial showed as follows:

Through its custodian of records Jay Guenther, Citibank admitted hundreds of pages of documents relating to each of Morrison’s ten credit card accounts.  For each of the ten accounts, Citibank introduced both account statements and payment checks from Morrison that spanned several years.
(footnote: 11)  On each of the accounts, Morrison regularly paid only approximately the minimum amount due each month. 

In nearly all of the accounts, Morrison made her last payments in April or May of 2003.
(footnote: 12)  After that, Citibank continued to prepare and mail statements for several months but never received further payment from Morrison.  Citibank asked the trial court to award it the sum of the balances due as of the final statements sent to Morrison, minus a few small credits in her favor. 

Guenther stated that it was Citibank’s usual course of business to mail statements to Morrison, and he believed that Citibank had mailed the unpaid statements, although he was not familiar with Citibank’s automated mailing system and could not be sure that the statements were actually mailed or received.  Guenther also testified that Morrison never disputed any of the charges or statements, and the record reflects that many of the unpaid statements were addressed to Morrison at the same address as the earlier statements on which she had made payments, which was also the address shown on her personal checks.
(footnote: 13)  The trial court found that Citibank mailed the ten final statements to Morrison but did not know if she received any of them.
(footnote: 14)   Assuming without deciding that account stated may be employed to collect credit card debt under Texas law, we nevertheless conclude that the evidence is too weak to support the trial court’s judgment.

We turn first to Morrison’s legal sufficiency challenge.  Although the evidence is meager, a reasonable fact-finder could make several inferences from it.  For example, based on the voluminous statements and payments, a fact-finder could reasonably infer that Morrison and Citibank conducted transactions that gave rise to an indebtedness of Morrison to Citibank.  Further, based on Morrison’s history of making payments without disputing the amount shown to be due, a fact-finder could reasonably infer that Morrison impliedly agreed to the full amount shown on the statements and impliedly promised to pay the indebtedness.
(footnote: 15)  Applying the appropriate legal sufficiency standard of review,
 we hold that there is more than a mere scintilla, and, therefore, legally sufficient evidence to establish the three elements of account stated.  

Unlike legal sufficiency challenges, however, factual sufficiency issues concede that the record presents conflicting evidence on an issue.
(footnote: 16)  We may set aside a finding for factual insufficiency if the “evidence adduced to support the vital fact, even if it is the 
only
 evidence adduced on an issue, is factually too weak alone to support it.”
(footnote: 17)  The Texas Supreme Court has acknowledged that it is “not simple” to explain how there may be some probative evidence on an issue and, at the same time, factually insufficient evidence.
(footnote: 18) 

   Considering all of the evidence—Morrison’s payment history involving a pattern of minimum monthly payments; the fact that the unpaid statements were mailed to her but, the trial court found, it was unknown whether she received them or not; and her failure to dispute any of the statements—we conclude that the evidence is fatally weak on the second element of account stated (“an agreement, express or implied, between the parties fix[ing] an amount due”).  The statements show that, when she was making payments, Morrison regularly paid only a fraction of the full balance claimed to be due.  Further, Morrison’s failure to dispute the final statements, combined with the trial court’s finding that Citibank did not know whether Morrison received the statements, is very weak evidence on the question of whether she “agreed” to pay the amount claimed in the final statements.
(footnote: 19) 

We conclude that the evidence is so weak that the trial court’s conclusion that Morrison agreed to the amount due is clearly wrong and manifestly unjust.
(footnote: 20)  We, therefore, hold that the evidence was factually insufficient to support the account stated cause of action.  Having found the evidence factually insufficient to support the judgment, we must reverse and remand for a new trial.
(footnote: 21)  

Accordingly, we sustain Morrison’s factual sufficiency issue and reverse and remand for a new trial.
(footnote: 22)
 PER CURIAM

PANEL A:  CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED:  February 28, 2008 
 

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Beijing Metals & Minerals Import/Export Corp. v. Am. Bus. Ctr., Inc.
, 993 F.2d 1178, 1182 (5th Cir. 1993);
 Cont’l Cas. Co. v. Dr Pepper Bottling Co. of Tex., Inc.
, 416 F. Supp. 2d 497, 504–05 (N.D. Tex. 2006);
 Neil v. Agris
, 693 S.W.2d 604, 605 (Tex. App.—Houston [14th Dist.] 1985, no writ);
 Arnold D. Kamen & Co. v. Young
, 466 S.W.2d 381, 388 (Tex. Civ. App.—Dallas 1971, writ ref’d n.r.e.).

3:
Neil
, 693 S.W.2d at 605.

4:
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362–63 (1960)
.  

5:
City of Keller v. Wilson
, 
168 S.W.3d 802, 807, 827
 (Tex. 2005).  

6:
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).

7:
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406–07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

8:
Lofton v. Tex. Brine Corp.
, 777 S.W.2d 384, 387 (Tex. 1989).

9:
Pool v. Ford Motor Co.
, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh’g).

10:
Id
.

11:
For example, with respect to one of Morrison’s accounts, Citibank introduced statements from 1998 to 2003 and payment checks from 1999 to 2003. 

12:
The one exception to this pattern was that Morrison continued to pay on one account until August 2003. 

13:
At some point, the addresses on the statements changed, and the final statements of all ten accounts were sent to Morrison at a different address.  
The record does not show why the address changed, but neither party has contended, here or in the trial court, that the statements were sent to an incorrect address.

14:
The only other witness was Citibank’s trial counsel, Allen Adkins, who testified briefly regarding attorney’s fees.  

15:
See E. Dev. & Inv. Corp. v. City of San Antonio
, 557 S.W.2d 823, 825 (Tex. Civ. App.—San Antonio 1977, writ ref’d n.r.e.) (holding that where utility provider and customer discussed customer’s delinquent accounts, the customer had never disputed the amounts due or final bills and had inquired as to the lowest amount that would be accepted to settle, the trial court could reasonably infer that the customer had agreed to the account).

16:
The Cadle Co. v. Munawar
, No. 13-02-00225-CV, 2005 WL 1300783, at *10 (Tex. App.—Corpus Christi June 2, 2005, pet. denied) (mem. op.); 
Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.
, 766 S.W.2d 264, 275 (Tex. App.—Amarillo 1988, writ denied).

17:
Ritchey v. Crawford
, 734 S.W.2d 85, 86–87 n.1 (Tex. App.—Houston [1st Dist.] 1987, no writ); 
Cadle Co.
, 2005 WL 1300783, at *10.

18:
Pool
, 715 S.W.2d at 635; 
In re King’s Estate
, 150 Tex. 662, 666, 244 S.W.2d 660, 662 (1951).

19:
Cf.
 
Ishin Speed Sport, Inc. v. Rutherford
, 933 S.W.2d 343, 348 (Tex. App.—Fort Worth 1996, no writ) (citations omitted) (“[D]ealings between parties may result in an implied contract where the facts show that the minds of the parties met on the terms of the contract . . . . and whether [the parties’] conduct evidences their agreement is a question to be resolved by the finder of fact.”).

20:
See Garza
, 395 S.W.2d at 823; 
King’s Estate
, 150 Tex. at 665, 244 S.W.2d at 661.  Guenther did not testify that the prices charged were usual, customary, and reasonable, a potential alternative to proving the second element.  
See Neil
, 693 S.W.2d at 605.

21:
See, e.g.
, 
Garza
, 395 S.W.2d at 823.

22:
We do not reach the question of whether the trial court properly awarded attorney’s fees based on the account stated cause of action.  
See
 
Tex. R. App. P.
 47.1.